## Ranck *v.* Brackbill, Appellant.

*Marriage—Contract—Breach of promise—Evidence.*

In an action by a woman against a man to recover damages for breach of promise of marriage, the fact of a long standing engagement to marry was not disputed. The controversy was as to who was at fault for the breach of the contract Plaintiff testified that after a day had been set for the marriage, she overheard the defendant say to his mother that he proposed to study over it, before he would marry her. She was then permitted to testify that shortly after hearing the declaration by the defendant, she told her father and aunt of it. The father and aunt were then permitted to testify to what the plaintiff had told them that she had overheard. *Held,* that the evidence of the father and aunt was mere hearsay and inadmissible.

Argued May 16, 1904. Appeal, No. 16, Jan. T., 1904, by plaintiff, from judgment of C. P. Lancaster Co., Sept. T., 1901, No. 1, on verdict for plaintiff, in case of Elizabeth Ranck v. Preston E. Brackbill. Before MITCHELL, C. J., DEAN, BROWN, POTTER and THOMPSON, JJ. Reversed.

Assumpsit for the breach of promise of marriage. Before ENDLICH, J., specially presiding.

At the trial it appeared that there was no controversy as to the fact of an engagement to marry. The dispute turned on the question as to which party had broken the contract. Plaintiff testified that July 2, 1901, had been set for the marriage,

but that on the evening of June 26, 1901, she overheard the defendant say to his mother that he proposed to study over it, before he would marry her.   Plaintiff's counsel then made the following offer:

Mr. Davis : I offer to show that she narrated to her father and her aunt the conversation that she heard between the defendant and his mother downstairs.

Objected to by the defendant as incompetent and irrelevant.

The Court: You do not propose to ask her what she told her father and her aunt, but simply to ask her whether she repeated to her father and to her aunt the conversation which she overheard without going into the terms of it?

Mr. Davis: Yes.

Objection overruled.   Defendant excepts.   [1]

Q. State whether or not you told your father and your aunt on that same evening, after you went upstairs, of the conversation you heard between the defendant and his mother.   A. I did.

Mr. Hensel : John D. Ranck and his sister both being on the stand, it is assumed, as I understand, to ask them a question, whether or not this woman told them of a certain conversation which she heard, and the contents of that conversation. Your honor will see that I get an objection.

The Court : What is your objection ?

Mr. Hensel : If it is understood that the court has already ruled and said it will admit that offer of the gentlemen to prove, by John D. Ranck and his sister, I want an objection to it as incompetent, irrelevant and immaterial.

Bill of exceptions signed, sealed and filed for the defendant. [2]

Verdict and judgment for plaintiff for $3,000.   Defendant appealed.

*Errors assigned* among others were (1, 2) rulings on evidence, quoting the bill of exceptions.

*W. U. Hensel,* with him *C. R. Kline,* for appellant.—It was error to admit the testimony of the witnesses to the effect that plaintiff repeated to them what she alleged she heard defendant tell his mother: Ogden v. Penna. R. R. Co., 1 Monaghan, 249.

When declarations are not incident to the act, but merely narrative of a past transaction, this, and not proximity of time, is the true test : 1 Wharton on Evidence, sec. 259 ; Waldele v. R. R. Co., 95 N. Y. 274 ; R. R. Co. v. Mara, 26 Ohio St. 185 ; Patterson's Railway Accident Law, 417, 418 : Mullan v. Steamship Co., 78 Pa. 25 ; Stern v. Ry. Co., 1 W. N. C. 531.

Declarations only become a part of the res gestæ when made contemporaneous with the act done : Grim v. Bonnell, 78 Pa. 152 ; Hanover R. R. Co. v. Coyle, 55 Pa. 396 ; Mullan v. Steamship Co., 78 Pa. 25 ; Mason Fruit Jar Co. v. Paine, 166 Pa. 352.

*T. B. Holahan* and *B. F. Davis*, for appellee.—The essential fact of the woman's consent to defendant's proposal of marriage may be shown by her own acts and declarations to third parties: Moritz v. Melhorn, 13 Pa. 331 ; McCormick v. Robb, 24 Pa. 44 ; Leckey v. Bloser, 24 Pa. 401 ; Ogden v. Penna. R. R. Co., 1 Mona. 249.

OPINION BY MR. JUSTICE POTTER, June 15, 1904 :

This was an action for damages for breach of promise of marriage. The verdict was for the plaintiff and the defendant here complains chiefly of the admission of certain testimony. The plaintiff, having testified of a very long courtship and that July 2, 1901, had been set for the marriage, said that on the evening of June 26, 1901, she overheard the defendant say to his mother that he proposed to study over it, before he would marry her. Against the objection of the defendant, she was permitted to testify that, shortly after hearing the declaration by the defendant, she told her father and aunt of it. They were then permitted to testify to what the plaintiff had told them that she had overheard. The fact of a long standing engagement to marry was not disputed. The inquiry was as to who was at fault for the breach of the contract. The defendant denied that he had used the language in question, in conversing with his mother, and said that he had never refused to marry the plaintiff. The conversation between the defendant and his mother was not an important or essential element in the case. It may have been some indication of his mental attitude toward the plaintiff, but it was not evidence that he had

broken or resolved to break his contract.   The important fact
to be established was the breach of the promise of marriage.   It
may be that the direct testimony bearing upon the question,
and obvious inferences from the undisputed evidence, would
have been sufficient to satisfy the jury that the defendant broke
the engagement.   But the plaintiff was not satisfied with these.
She was permitted without objection to testify to the fact of
the conversation itself, and to what she heard the defendant
say to his mother.   She had the full benefit, before the jury, of
her statement in that respect and with that she should have been
content.   As to whether or not she repeated what she had heard,
to two persons or to ten persons, made no difference.   It was
nothing more than her own narrative of a transaction then past
and could not be considered as part of the res gestæ.   We can
only regard the calling of the father and the aunt to testify
to what the plaintiff said to them, as an attempt to introduce
hearsay evidence, not justified under any exception to the gen-
eral rule which forbids it.   To permit it in this case would
be to open the door to a dangerous facility for increasing the
number of witnesses, by the easy process of admitting all those
to whom the plaintiff in her grief and indignation might have
seen fit to rehearse her version of what had occurred.   We are
unable to see in this instance any exceptional circumstances
such as must be found in order to justify the admission of
proof of prior unsworn statements of the witness.   It is true
that the testimony was conflicting, but that of itself was not
sufficient.   It was not alleged that the plaintiff had herself
made any inconsistent statements, nor was there any attempt to
impeach her general character for truth, or to show that she had
recently fabricated the statement as to the conversation which
she had overheard.   We are not able to justify upon any sound
principle the introduction of the testimony of the father and
the aunt, as to facts about which they had no personal knowl-
edge.

In the eye of the jury they gave to the case of the plaintiff,
the apparent strength of three witnesses instead of one.   The
result could hardly have been other than prejudicial to the de-
fendant.   The first, second and third specifications of error are
sustained, and the judgment is reversed, with a venire facias
de novo.