STATE OF MAINE *vs.* ERNEST E. TRUE.

Androscoggin.  Opinion, February 9, 1937.

*Frank T. Powers*, County Attorney for the State.
*John G. Marshall*, for respondent.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J.   The respondent was tried and convicted of perjury, when testifying before the grand jury of his county.

Thereafter, in due course, he presented to the presiding Justice his motion for a new trial. This was denied, and the case is before this Court on appeal from such ruling.

We have for consideration also exceptions reserved during the trial.

It appears in the record that about midnight of July 5, 1935, respondent was riding as a guest passenger of one Maurice Davis, who was driving his automobile toward the City of Lewiston, when the Davis car collided with another automobile, with resultant serious property damage and personal injury.

Respondent was taken at once to the Central Maine General Hospital where he received treatment for a fractured collar bone, an injured leg and "some lacerations."

At the September Term of the Superior Court following, while the grand jury was investigating charges that the said Davis, at the time of the collision above referred to was driving his automobile while under the influence of intoxicating liquor, the respondent was introduced, duly sworn, and interrogated as to his acts and the acts of Mr. Davis on the evening before the collision.

It appears in the record that by appointment Mr. Davis, with his wife, met the respondent in Lewiston and drove out with him to a camp in the Town of Leeds, where they passed the evening, and that they were on their way homeward at the time of the collision, respondent then in the rear of the car, asleep, or otherwise unaware of the occurrence of the collision ; that he had taken to the camp that night a quart bottle of applejack brandy, while Mr. Davis brought a case of beer ; that about half of the brandy and several bottles of the beer were drunk at the camp ; that a bottle half-full of applejack brandy and a case containing five empty beer bottles and three, filled with beer, were found near the location of the Davis car at the scene of the collision.

Joseph A. Picard, captain of the Lewiston police, an active member of that department for twenty-four years, visited the respond-

ent in the hospital "from two and one-half to three hours after the accident," in the course of his duty, as an investigator of the facts leading up to and accompanying the Davis automobile collision, and made a second visit on the same day, with the County Attorney and Eugene A. Cloutier, Deputy Sheriff and a former inspector of the Lewiston Police Department. Quoting from the record, as to Captain Picard's first interview with respondent, at the hospital,—

"Q. Did you (Picard) inquire of him (True) relative to Mr. Maurice Davis' condition, so far as drinking intoxicating liquor prior to the accident?

A. I did.

Q. What did he say?

A. He said he, Mr. True, had been drinking . . . had taken at least two or three drinks of applejack brandy and about two or three drinks of beer. He mentioned consuming some four or five bottles of beer, and that Mr. and Mrs. Davis had taken a drink for each drink he had taken. . . .

Q. Is there any question in your mind but what Mr. True told you in the hospital that morning, Saturday morning, that he saw Maurice Davis drink applejack brandy at the Kelley camp?

A. There isn't any doubt in my mind."

From Deputy Sheriff Cloutier's testimony —

"Q. And what did he (True) say about their drinking, he and Davis especially, that night?

A. Said that after they got into camp there they opened the bottle of brandy and they all had a drink of brandy, and then had some beer; and in answer to a question put by the County Attorney said that they had had either two or three drinks of applejack brandy and that he couldn't remember how much beer but they had drunk either four or five bottles of beer . . . .

Q. What did he say about Davis drinking?

A. He said Davis had — Davis and Mrs. Davis had drink for drink. Whenever he had a drink they had a drink."

In the grand jury investigation respondent, testifying under oath, was asked by the County Attorney,

"Q. Did you see Mr. Davis drink any applejack brandy that evening, in the cottage or out of it?"

Respondent answered, "I did not." He was asked, "Did you tell the officers (meaning Picard, Cloutier and the County Attorney) on Saturday morning, July 6, 1935, in the hospital that Maurice Davis drank some of the applejack brandy the night before, or words to that effect?" Respondent answered, "No"; and for this, because it was believed to be a false reply, wilfully and corruptly given, he was indicted and tried.

Within this state, "Whoever, when required to tell the truth on oath or affirmation lawfully administered, wilfully and corruptly swears or affirms falsely to a material matter, in a proceeding before any court, tribunal or officer created by law, or in relation to which an oath or affirmation is authorized by law, is guilty of perjury." R. S., Chap. 133, Sec. 1.

That respondent answered "No," when under oath, before a judicial tribunal is not disputed; but he urges in defense that the matter inquired of was not material to the question at issue.

As before stated, the issue between the State and Maurice Davis was whether at the time of the collision the said Davis was operating an automobile "when intoxicated or at all under the influence of intoxicating liquor." R. S., Chap. 29, Sec. 88.

Generally speaking, any statement which is relevant to the matter under investigation is sufficiently material to form the basis of a charge of perjury.

"The ordinary test of materiality is whether the testimony given could have probably influenced the tribunal before whom the case was being tried, upon the issue involved therein. If it tended to do so, it was material." *State* v. *Miller*, 26 R. I., 282, 58 A., 882, 884, Editor's note, Am. and Eng. Ann. Cas., Vol. 3, p. 945, *State* v. *Sargood*, 80 Vt., 415, 68 A., 49; *State* v. *Howland*, 63 Colo., 414, 167 P., 961.

"It may be laid down as a general rule that any testimony which is relevant in the trial of a case, whether on the main issue or some

collateral issue,-is so far material as to render a witness who knowingly and wilfully falsifies in giving it guilty of perjury." 21 R. C. L., 259; *State* v. *Shupe*, 16 Ia., 36, 85 Am. Dec., 485; *State* v. *Miller*, supra, *Fields* v. *State*, 94 Fla., 490, 114 So., 317.

On the issue of Davis being under the influence of intoxicating liquor while driving at midnight of a certain day, it is clear that testimony of his drinking brandy in the evening hours of the same day is material.

In the process of rendering clear the drinking or not drinking of intoxicating liquor by Davis, on that evening, the grand jury had the right to demand all the evidence available; and the duty to consider it all, weighing all with care.

It was for them to determine what to believe; what to discard, and what an actor in the scene said, a few hours after the occurrence, about the drinking of Davis, as well as how he replied to questions before them; to determine the truth of respondent's replies, aided by their experience with men, and all the attendant circumstances and facts pertinent to the issue before them; to conclude that before them, upon inquiry under oath defendant testified truthfully or falsely.

It is not denied that respondent told the investigating officers that he drank applejack brandy on the evening at the camp and that Davis drank with him, drink for drink.

The fact that he had told of Davis drinking, meaning that he saw Davis drink intoxicating liquor, could have been shown to affect his credibility as a witness, and such evidence was therefore material. *State* v. *Crabb*, 131 Me., 341, 163 A., 83.

A false and sworn statement as to matter material to an inquiry before a grand jury acting within its authority is perjury. *Smith* v. *State*, 163 Ark., 223, 227, 259, S. W., 404; *Com.* v. *Warden*, 11 Metc., 406; *Chapman* v. *Gillet*, 2 Conn., 40, 49; *State* v. *Fasset*, 16 Conn., 457.

But it is argued that at most we have here only two contradictory statements, made at different times.

This is not the situation.

Respondent was presented to the trial Court for stating under oath to the grand jury that he did not tell the officers, at the hospi-

tal, "that Maurice Davis drank some of the applejack brandy the night before, or words to that effect," a statement which the grand jury had believed to be false.

So far as the record shows, respondent had not been asked before as to this question, has not made two contradictory statements thereon.

The grand jury has found that when asked, for the first time this question, respondent gave to them a false answer. So answering the witness committed perjury, for two officers testified to a contrary state of facts and the grand jury believed them.

The respondent gains nothing from the exceptions argued.

The first exception arose during the cross-examination of Inspector Cloutier when the Justice presiding ruled inadmissible a charge bearing on an allegation in the first count of the indictment, which was not incorporated in the second count.

As to the first count, the record shows that an entry *nolle prosequi* was authorized.

Trial was limited to the charges in the second count. The ruling challenged was correct.

As to the second exception, the following questions by the County Attorney and answers by respondent appear:

"Q. Do you remember of testifying before the grand jury that you did not drink that day before you went out with Mr. Davis to the Kelley camp that night? . . .

A. Yes.

Q. That was your testimony first, that you did not drink any beer before going with Mr. Davis to the Kelley camp that night?

A. Yes.

Q. Did you later come before the grand jury and testify that that was not true?

A. Yes. . . .

Q. You did lie before the grand jury in that respect, under oath?"

Counsel for the respondent interjected a remark which the court apparently interpreted as an objection; whereupon the court said:

"That is all right. You asked him about the truth of his testimony before the grand jury. I think it is perfectly proper for the State to put in evidence that he lied in other respects having to do with this particular case on this particular investigation. I think it is proper evidence and I will admit it."

Exception was taken, and counsel argues that by his statement quoted the Justice expressed his opinion.

No such interpretation of the statement of the Justice is founded on his words.

In determining the truth or falsity of respondent's statements the jury were entitled to recital of his affirmations and denials of incidents once stated by respondent as having occurred upon the day of the accident.

The second exception is overruled.

In his charge the presiding Justice quoted the question asked respondent as to his telling officers of Davis' drinking applejack brandy in the camp and said:

"I instruct you as a matter of law that the inquiry was material in this case."

To this instruction, exception was taken.

We take it to be settled law that the materiality of a statement or testimony assigned as false is a question of law for the court and should not be submitted to the jury.

The decisions on this issue may be found in 48 C. J., p. 906, Sec. 178.

"And the materiality of what is falsely sworn, where an element of the crime of perjury, is one (a question) for the court." *Sinclair v. United States*, 279 U. S., 263, 298, 49 S. Ct., 268, 273.

*Appeal dismissed.*
*Exceptions overruled.*
*Judgment for the State.*